## GEORGIA ICE COMPANY *vs.* PORTER & MEAKIN.

70 637
94 318

70 637
108 348
109 674

[This case was brought forward from the last term, under §4271 (a) *et seg.* of the Code.]

1. That a notary public was an employé of a bank in which a member of a firm desiring an attachment was also an employé and stockholder, did not create such a relation between the two as made it improper for the notary to issue the attachment or rendered the writ so issued void.
2. There was no error in charging the jury that the North American Ice Company was concluded by a judgment, regularly rendered upon an attachment sued out against them, and levied on their property.
3. Where parties commenced and carried on business as a corporation *de facto,* and held themselves out to the world as such, and in that name and character obtained credit, they were estopped from denying such character and name, especially after judgment had been rendered against them.
(a.) A perfect equity is subject to levy and sale, although the naked legal title may be in a third person.
(b.) The conversion of a trading company acting as a corporation *de facto* into one *de jure,* will not exempt the property held in the latter character from liability to the obligations of the former.
February 20, 1883.

Attachments. Officers. Nullities. Judgments. Corporations. Levy and Sale. Before Judge HILLYER. Fulton Superior Court. April Term, 1882.

On June 23, 1879, an attachment was sued out by Porter

& Meakin against the North American Ice Company, and was levied on certain real estate. No defence was made, and a judgment in attachment was rendered for the plaintiff April 1, 1880. A claim was interposed to the levy thereunder by the Georgia Ice Company.

When the claim case was called for trial, claimant's counsel moved to quash the execution and attachment proceedings, on the ground that the affidavit was made by J. H. Porter, on behalf of his firm, before C. D. Woodson, N. P., and the attachment was issued by the latter. In support of this motion, it was shown that Porter was cashier of the Merchant's Bank, and owned stock therein, and that Woodson was a clerk in the same bank. The court overruled the motion.

The evidence on behalf of the plaintiffs was, in brief, as follows: The land on which the ice factory is located, and which is now in controversy, was purchased in 1875, one Brown negotiating the purchase and taking the deeds in the name of one Coughlin. On December 20, 1879, after the levy of the attachment, Coughlin made a deed to the property to the Georgia Ice Company, the expressed consideration being $1.00. The property was returned for taxation in 1878 and 1879, and assessed as belonging to the North American Ice Company. Coughlin made no return for those years. The goods, for the purchase money of which suit was brought, were delivered on the order of one Becker, who was in charge of the factory at the time, and represented himself as being the agent of the North American Ice Company; and the goods were so charged. The work which formed the subject-matter of some of the charges was done at the factory. The North American Ice Company had a sign over the door, and there was a safe in the office with their name on it. The plaintiffs had previously sold and charged goods in the same way, and the bills had been paid.

The evidence on behalf of the defendant was, in brief, as follows: One Beath had certain patents for making ice;

and for the purpose of putting them into practical opera-
tion, he formed a partnership with Coughlin and John P.
Jones. They were to furnish the necessary money, and
own four-fifths interest in the patents throughout the
United States. Coughlin furnished the money to buy the
ground and erect this factory. The title was taken in his
name, but it was really for the benefit of the partnership.
About a year after this, when the factory was nearly com-
pleted, a question arose as to the proper manner of hold-
ing the patents, it being suggested that, if they were held
by the partnership, any one of the partners might use them
for his own private benefit. For the sole purpose of hold-
ing these patents, the North American Ice Company was
then incorporated, and the title to the patents was con-
veyed to it. In the early part of the year 1879, the com-
pany conveyed away its patents, and Beath's connection
with it ceased. In 1878, when the bill sued on was con-
tracted, Becker occupied the ice factory, stating that he
did so by permission of John P. Jones. He was making
experiments in regard to making ice on his own account,
and the premises were closed except while he was there.
He employed his own workmen and paid them himself.
The bill of Porter & Meakin was made while he was there.
At the time of the trial, Beath was the manager of and a
stockholder in the Georgia Ice Company. He swore that
no part of the property levied on ever belonged to the
North American Ice Company, and that none of its money
was used in the purchase of the land or the erection of the
building.

The jury found the property subject. Claimant moved
for a new trial on the following grounds:

(1.) Because the court refused to quash the attachment
proceedings.

(2.) Because the court erred in charging the jury as
follows: " The general principle of law is that no person
is bound by a judgment, unless he has had his day in court.
If he is served with the process, he is bound. This prin-

ciple, however, applies where a levy is made under an attachment. If the attachment was sued out against the North American Ice Company and levied, and proper proceedings had, and a verdict and judgment rendered in the case, this would be conclusive as to the liability of the North American Ice Company. "

(3.) Because the court erred in charging the jury as follows: " If the North American Ice Company had the equitable ownership of the property at the time of the levy of the attachment it would be subject. If, when Brown took the deed to Coughlin, he took it for the benefit of the persons who were afterwards incorporated for the purpose of carrying out the same objects that these persons were associated together for, the equitable title would be in the defendant, even though the charter was not obtained until afterwards, and it would be your duty to find the property subject; but if he took the deed at the time for other and different parties, it would be otherwise," this being, in substance, the entire charge of the court on that branch of the case.

(4.) Because the verdict of the jury was contrary to law and evidence.

The motion was overruled, and claimant excepted.

Cox & Hammond, by brief, for plaintiff in error.

B. F. Abbott, for defendants.

Hall, Justice.

1. The notary public issuing this attachment bore no such relation to either of the plaintiffs as would make it improper for him to act, and as would render the writ void; he was not connected in business with Porter in such manner as to disqualify him from acting as a notary, from taking the affidavit and bond and signing the writ in a case in which Porter and his partners were parties. The most that can be said is that Porter and the notary were

co-employés in a bank in which Porter was likewise a stockholder. None of the cases cited for the plaintiff in error have gone this length, though they have gone quite far enough. 50 *Ga.*, 425, 435, is a complete answer to the position here taken.

2. Nor was there any error in charging the jury that the North American Ice Company was concluded by a judgment regularly rendered upon an attachment sued out against them and levied upon their property.

3. Where parties commenced and carried on business as a corporation *de facto*, and held themselves out to the world as such, and in that name and character obtained credit, though the same persons afterwards obtained a charter under another name, and thereby became a corporation *de jure*, continuing all the time to use in the last named corporation the property on which they carried on business, and obtained credit under their first name, and when they took titles to the property in question in the name of one of their associates in the enterprise, for the use of himself and all the others who paid the purchase money therefor, it was not error to charge the jury in a claim case, " that if the company had the equitable ownership of the property at the time of the levy of the attachment, it would be subject; that if the deed was taken for the benefit of the persons who were afterwards incorporated for the purpose of carrying out the same objects that these persons were associated together for, the equitable title would be in defendant, even though the charter was not obtained until afterward, it would be their duty to find the property subject, but if he took the deed at the time for other and different parties, it would be otherwise."

The verdict finding the property subject, under this charge, which fairly submitted the issue, was sustained by the evidence in the case, and being so sustained, was not only authorized but required by well settled principles of law. The defendants were estopped from denying the

character and name under which they traded and obtained the credit, especially after judgment had been rendered against them covering the transaction. Code, §§3577, 3826, 3753. That a perfect equity is subject to levy and sale, although the naked legal title may be in a third person, is so clear, that a citation of authorities to sustain it would be needless. The conversion of a trading company acting as a corporation *de facto*, into one *de jure*, will not exempt the property held in the latter character from liability for the obligations of the former. Morawetz on Corp., §143, and cases cited in note there; *Ib.*, 134.

Judgment affirmed.